**INDIANA FEDERAL SAVINGS AND LOAN ASSOCIATION, formerly known as First Federal Savings and Loan Association of Valparaiso, Appellant (Plaintiff Below),**

v.

**Cynthia T. BREITINGER, David E. Luke, Sharon D. Luke, J & R Insulation, Inc., Homan and Wright Plumbing, Inc., Debra Moore, Gayle Lee, John Doe, as Occupant(s) of 1851 Adams Street, Portage, Ind., Auditor of Porter County, Indiana, and Treasurer of Porter County, Indiana, Appellee (Defendants Below).**

No. 64A03–8903–CV–122.

Court of Appeals of Indiana, Third District.

March 27, 1990.

Timothy J. Dougherty, Spangler, Jennings & Dougherty, P.C., Merrillville, for appellant.

Robert A. Welsh, Harris, Welsh & Lukmann, Chesterton, for appellee.

STATON, Judge.

Indiana Federal Savings & Loan Association (Federal Savings) contests the award of certain property to Cynthia Breitinger pursuant to a tax sale, thus presenting this court with the following issues for our review:

I. Whether the trial court erred by finding that actual notice of the tax sale was *mailed* to Federal Savings?

II. Whether the trial court erred by finding that the mailed notice was adequate?

III. Whether the trial court erred by finding that the County Auditor followed the legal and statutory requirements pertaining to the tax sale?

IV. Whether the trial court erred by finding that Federal Savings, as mortgagee, had no right to be notified of the impending transfer of the tax deed?

Affirmed.

In order to purchase their home, Sharon and David Luke (the Lukes) executed a promissory note and mortgage with Federal Savings of Valparaiso, Indiana. This mortgage was duly recorded in the Porter County Record Book on February 25, 1982.

On June 19, 1985, the Porter County Auditor mailed to the Lukes notice that their mortgaged property would be offered in a tax sale on August 12th. Similarly, on June 25, 1985, the Porter County Auditor mailed by certified mail the newspaper page containing the August 12th Tax Sale information to the Federal Savings Bank located at Valparaiso; this was sent to the attention of Jane Szoke. The same information was sent to the Federal Savings Bank located at Portage. The certified receipts contained what appeared to be the signatures of two employees of the Federal Savings Banks, Candy Koehl and Donna Mileiusky, respectively.

On August 12, 1985, the tax sale was held and the property in question was sold to Walter Breitinger, who later titled the property to his wife, Cynthia. Consequently, on June 26, 1987, notice of the Tax Sale Redemption and the impending Issuance of the Deed was sent by certified mail to the Lukes.

Subsequently, on December 8, 1987, Federal Savings filed a complaint to Foreclose on the mortgage against the Lukes; this was amended on August 5, 1988, to include a complaint requesting that the tax sale be set aside and that Breitinger's interest be extinguished.

The trial court concluded that the Porter County Auditor had followed the tax sale requirements as found in I.C. 6–1.1–24–1 et seq., thus giving Federal Savings adequate notice of the tax sale. The court also concluded that this notice met the requirements of actual notice as enunciated in *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180, thus preserving the due process rights of Federal Savings. Consequently, the court concluded that the tax sale deed cut off the mortgage interest, making Breitinger the rightful owner of the property.

### Standard of Review

When reviewing a trial court's judgment based on its findings of fact and conclusions of law, we will reverse only if the findings or subsequent conclusions are clearly erroneous. *Donavan v. Ivy Knoll Apts. Partnership* (1989), Ind.App., 537 N.E.2d 47, 50. "Clearly erroneous" findings of fact are those unsupported by any facts or reasonable inferences in the record; "clearly erroneous" conclusions of law occur when the findings of fact do not support them; and, a "clearly erroneous" judgment is one unsupported by the conclusions of law. *Id.* In so reviewing, without reweighing the evidence, we look at the evidence in a light most favorable to the trial court, and reverse only if that evidence "leads uncontrovertibly to a conclusion opposite to the one reached." *Donavan, supra*, at 50–51.

### I.

### Notifying the Mortgagee

Federal Savings contends that the trial court erred by finding that actual notice of the tax sale was sent by certified mail to Federal Savings, thus arguing that the evidence is insufficient to support such a finding. Specifically, Federal Savings claims that no proof was made as to the genuineness of the signatures on the certified mail return receipts; that the employees signing the receipts were without authority to do so; that the documents were sent to the wrong address; and that the Auditor could not testify that such mailing was made.

As stated above, a finding is "clearly erroneous" if it is unsupported by any facts or reasonable inferences, and, when reviewing, we look at the evidence in the light most favorable to the trial court. Here, the facts and reasonable inferences support the trial court's finding that actual notice was sent by certified mail to Federal Savings.

Pursuant to *Mennonite, supra,* actual notice of the tax sale needed to be sent via mail or by personal delivery to mortgagees. However, proof of actual and proper *receipt* was not discussed. Here, the evidence and inferences indicate that a certified mail delivery was made to Federal Savings. At trial, over an objection as to a lack of proper foundation, copies of the certified mail return receipts were admitted into evidence, ostensibly as proof that the Auditor's office received these receipts. These receipts indicate that the certified mailing was addressed to Federal Savings, and the resulting inference is that the post office delivered it to the proper address. Additionally, the Auditor testified that the only possible enclosure would have been the newspaper advertisement of the forthcoming tax sale. According to *Mennonite*, this notice is sufficient.

Furthermore, while Federal Savings claims that the tax sale information was not mailed to its proper office, Federal Savings does not dispute the fact that the address used *was* that of a Federal Savings branch, and the branch at which Jane Szoke, the person in charge of the loans, worked. In *Holland v. King* (1986), Ind. App., 500 N.E.2d 1229, the mailed notice contained a typographical error; however, the notice did reach the intended address— it was the *party's absence* which precluded delivery. Accordingly, this court found that actual notice, in accord with *Mennonite*, was made. Similarly, in the present case, given the reasonable inference that the certified letter was mailed to Federal Savings, its consequent "disappearance" would be due to Federal Savings' internal operations.

Finally, regardless of whether *Candy Koehl* actually signed the receipt, the reasonable inference is that the U.S. Post Office properly obtained a signature from a Federal Savings employee on the certified mail return receipt. As that employee would have been an agent of Federal Savings, that employee's knowledge is imputed to his employer, Federal Savings. Too, as an employer, Federal Savings is responsible for the acts of its employees. Given that the reasonable inference is that a certified mailing was sent to Federal Savings, Federal Savings is responsible for bringing the notice to the attention of the proper employee who will take the proper action.

## II.

### Adequate Notice

■ Federal Savings also contends that even if notice was mailed to Federal Savings, the notice which was sent, and, *arguendo*, received, was not adequate insofar as it was not reasonably calculated to inform Federal Savings of its interest in the tax sale.

The "notice" sent to Federal Savings consisted of a page of a newspaper which contained the listing of the properties for sale at the upcoming tax sale. These were listed alphabetically, by the names of the delinquent taxpayer-owners. Following the names was the location of the property, along with the amount of delinquent taxes owed on the property. Of course, the page contained the information pertinent to the tax sale itself.

According to Federal Savings, such "notice" was not adequate in that it was not case specific, but was a "blanket notice" of all properties for sale. Specifically, Federal Savings argues that the Auditor should have mailed notice containing only the information pertinent to its interest in the Luke property, such as that mailed to the Lukes, rather than mailing the full page of properties to be sold at the tax sale, and relying on Federal Savings to peruse this list in search of possible mortgage interests.

However, undisputed is the fact that, assuming that Federal Savings received the advertisement page in question, then Federal Savings *did receive* the following information: the names of the present, tax-delinquent "owners" of the property in question, i.e., the Lukes; the location of the property in question; the amount of the delinquent taxes; and the information pertinent to the tax sale. According to *Mennonite*, mortgagees must be given notice of forthcoming tax sales of properties in which they have an interest. The above facts do not indicate that the trial court erred by finding that such notice was adequate.

## III.

### The Auditor's Statutory Requirements

■ Federal Savings also argues that the Auditor did not send notice pursuant to the Indiana Statutes then in effect, because the statutes required notice to be sent via a certain form, which the Auditor did not use in the present case.

At the time in question, in order to receive the notice as prescribed by Indiana Statutes, the mortgagee had to request *such* notice. Federal Savings had made no such request. The statutes were subsequently amended and the required "request" for the statutorily prescribed notice was eliminated. In rendering our opinion today, we do not rule on the constitutionality of the previous required "request."

However, at the time in question, Federal Savings did not request the statutorily prescribed form of notice; consequently, pursuant to those same statutes, Federal Savings was not entitled to the form of notice they prescribed. However, this does not mean that Federal Savings was not entitled to *any* notice. The *Mennonite* decision ensured that Federal Savings was entitled to actual notice of the forthcoming tax sale. Although this notice may not have been as specific and detailed as that envisioned by the Indiana statutes, such notice was all that was required. We have already found that Federal Savings received adequate notice; Federal Savings cannot complain that it did not receive more notice, when its own decision not to request such notice precluded it from receiving that notice.

**1176**

## IV.

### Notice of Tax Deed & Redemption Period

■ Finally, Federal Savings contends that, as a mortgagee, it had an interest in the property and was thus entitled to notice of the expiration of the redemption period and the impending transfer of the tax deed to Breitinger.

Previous decisions indicate that a mortgagee is not entitled to such notice. The United States Supreme Court has determined that "a mortgagee clearly has a legally protected property interest, [and] he is entitled to notice reasonably calculated to apprise him of a pending *tax sale*." (Emphasis added.) *Mennonite, supra,* 103 S.Ct. at 2711. Whether a mortgagee was entitled to notice of the pending issuance of the tax deed was not addressed.

Later, our Indiana Supreme Court determined that "the due process clause of the fourteenth amendment does *not* require that actual notice be given of either the lapse of the redemption period *or the subsequent issuance of the tax deed.*" (Emphasis added.) *Calhoun v. Jennings* (1987), Ind., 512 N.E.2d 178, 184. This determination was later reiterated and brought to the attention of the United States Supreme Court in *Gossett v. Auburn Nat. Bank of Auburn* (1987), Ind. App., 514 N.E.2d 309, *reh. denied, cert. denied, Auburn Nat. Bank of Auburn v. Sanda* (1988), — U.S. —, 109 S.Ct. 312, 102 L.Ed.2d 330, this court held that "Auburn [the mortgagee] had no right either to actual notice or notice by mail from the auditor of the proposed issuance of the tax deed." *Gossett, supra,* at 313.

Consequently, as mortgagee, Federal Savings was *not* entitled to notice of either the expiration of the redemption period or the issuance of the tax deed.

Affirmed.

RATLIFF, C.J., and GARRARD, P.J., concur.